UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

**JACOB M.,**

**Plaintiff,**

    v.

**COMMISSIONER OF SOCIAL SECURITY,**

**Defendant**.

Case No. 1:23-cv-00481 TK

OPINION AND ORDER

## OPINION AND ORDER

    This case is before the Court to consider a final decision of the Commissioner of Social Security which partially denied Plaintiff's application for child's disability benefits and supplemental security income. That final decision was issued by the Appeals Council on March 31, 2023. After filing the complaint in this case, Plaintiff moved for judgment on the pleadings (Doc. 7) and the Commissioner filed a similar motion (Doc. 8). For the following reasons, the Court will **DENY** Plaintiff's motion for judgment on the pleadings, **GRANT** the Commissioner's motion, and **DIRECT** the Clerk to enter judgment in favor of the Defendant.

### I.  BACKGROUND

    Plaintiff applied for both child's social security disability benefits and supplemental security income in July of 2020, alleging a disability beginning on January 26, 2018. After initial administrative denials of those applications, Plaintiff appeared at a video hearing before an Administrative Law Judge on December 14, 2021. Both Plaintiff and a vocational expert, Frank A. Lindner, testified at the hearing.

    The ALJ issued an unfavorable decision on December 28, 2021. In that decision, the ALJ found, first, that Plaintiff was born on January 26, 2000, and had not attained the age of 22 as of his alleged onset date, nor had he engaged in substantial gainful activity since that date. Next, the ALJ determined that Plaintiff suffered from severe impairments including anxiety disorder with obsessive-compulsive disorder, depressive disorder, attention deficit disorder, complex regional pain syndrome, carpal tunnel syndrome, and sciatica. The ALJ further found that none of these impairments, considered singly or in combination, met or equaled the criteria for disability under the Listing of Impairments.

    Moving to the next step of the sequential evaluation process, the ALJ found that Plaintiff had the ability to perform a limited range of light work, concluding that he could no more than frequently climb ramps and stairs, balance, kneel, crouch, crawl, stoop, and perform gross and

fine manipulation.  Additionally, he could not climb ladders, ropes, or scaffolds, nor could he tolerate exposure to dangerous machinery, motor vehicles, unprotected heights, or vibrations.  Lastly, he was limited to the performance of simple, routine, and repetitive tasks done in a low-stress environment involving only simple decision-making and only occasional changes in the work routine and contact with others in the workplace, and he could not tolerate any contact with the general public.

Plaintiff had no past relevant work.  The ALJ determined, based on the testimony of the vocational expert, that Plaintiff could do unskilled light jobs like office helper, collator operator, and photocopying machine operator, and that those jobs existed in significant numbers in the national economy.  As a result, the ALJ concluded that Plaintiff was not under a disability as defined in the Social Security Act.

In his motion for judgment on the pleadings, Plaintiff raises these arguments:

1.  The ALJ's RFC contained very specific limitations which were not supported by substantial record evidence.

2.  The ALJ additionally erred by failing to properly and separately assess Plaintiff's social limitations regarding interaction with supervisors, coworkers, and the public.

3. The ALJ failed to properly assess the opinion evidence of record.

Plaintiff's memorandum, Doc. 7-1, at 17, 21, 25.

## II.  THE KEY EVIDENCE

### A.  Hearing Testimony

Plaintiff, who was 21 years old at the time of the administrative hearing, first testified that he had completed high school and some college.  The only job he had ever held was at UPS, and he said that his stress and anxiety, together with panic attacks, prevented him from working.  He also testified to issues with repetitive hand movements due to carpal tunnel syndrome in both hands.  He would go lengthy periods of time where he could not get out of bed or deal with people.  Driving a car could cause panic attacks, and he had anxiety about being in crowds or around strangers.

When asked about his efforts to obtain employment, Plaintiff said that once he got a job, the mental stress became too great and he quit.  He was also unable to use his hands to write or type.  His sciatica affected his ability to sit more than fifteen minutes at a time.  Standing caused his feet to be swollen and painful.  Plaintiff also testified about his family situation, stating that he lived with his mother, father, and brother, and that he had never attempted living on his own.

The vocational expert, Mr. Lindner, was asked questions about a person who could perform unskilled light work with the limitations described above. He responded that such a person could work as an office helper, collator operator, or photocopy machine operator, and he gave numbers for those jobs as they existed in the national economy. There would be no jobs, however, for such a person if he were off task for 15% of the time. All of those jobs would also not be available to someone who could only occasionally perform fine and gross manipulation.

### B. Medical Evidence

The relevant medical records show the following. A note from 2019 shows that Plaintiff had been diagnosed in 2012 with obsessive compulsive disorder, generalized anxiety disorder, and major depressive disorder. At that time, he appeared to have issues with receptive language, expressive communication, social interaction, work interaction, initiative, and work skills. Vocational rehabilitation was recommended. A prior counseling note showed that he suffered from generalized anxiety disorder but his GAF was rated at 67 and his attention and concentration span were normal. He also showed increased obsessive thoughts throughout 2018. At an initial assessment that year, he described an obsession about bugs which caused him to caulk around the windows of his home, noting that he had developed this obsession when he was 13 but that it had gone away and not returned until two weeks before. A counseling note from July, 2018 indicates that his anxiety and obsessive thoughts had improved . He had a setback in September when he was worried about having his wisdom teeth extracted, but by November of that year he stated that he was better and that he was going to start a job at FedEx. A note from January of 2019 indicates that he liked the job but had increased anxiety once he stopped working. He was thinking of starting college, though. By 2020, he was reporting increased depression and loss of interest as well as many bad days. He worked at a Tim Horton's for two days at one point but quit due to anxiety, and also said that Wellbutrin had helped with his symptoms. Plaintiff began describing symptoms of ADHD in 2020 and was prescribed Adderall for that condition. He quit another job in 2021 for the same reason, and he also reported increased anger that year.

There are a fair number of treatment records from Lewiston Village Pediatrics that span several years. Most of the visits were for acute illnesses but he carried a diagnosis of complex regional pain syndrome as well. There were few objective findings on examination, however. He did report some lower back pain in 2020 which was improved with chiropractic treatment. In that year, he was also diagnosed with carpal tunnel syndrome on the left, and he reported to a different provider that he experienced both wrist and hip pain from working at UPS.

### C. Opinion Evidence

Plaintiff was examined consultatively by Dr. Liu on August 28, 2020. He told Dr. Liu he had completed one semester of college but had never worked. His medical history included a diagnosis of complex regional pain syndrome and bilateral leg and hip pain exacerbated by exercise and cold weather. Plaintiff said he could do household chores, watch television, and socialize with friends. On examination, he had full flexion and extension of the spine, full range

of motion of the joints, and no evident abnormalities. His hand and finger dexterity were intact. Dr. Liu thought Plaintiff was capable of routine physical activities. (Tr. 589-92).

On that same day, Plaintiff saw Dr. Ransom, a psychologist, for a psychiatric evaluation. He told her he had been in counseling for eight years and also took medication, both of which had been helpful. Plaintiff said he was working on coping strategies and was usually able to function even with his anxiety, and he denied clinical levels of anxiety, depression, or panic attacks. His affect was full and his attention and concentration were intact. There were also no memory deficits observed. Plaintiff reported that he could drive, visit with friends, socialize, and interact with family. Dr. Ransom concluded that Plaintiff had no mental limitations. (Tr. 595-98).

Plaintiff's treating psychiatrist, Dr. Martin, completed a mental impairment questionnaire on October 27, 2021. He said that Plaintiff's symptoms included difficulty thinking or concentrating, obsessions or compulsions, and generalized persistent anxiety. Dr. Martin believed that Plaintiff would miss more than three days of work per month, that he had a fair ability to maintain attention for two-hour segments, that he could not maintain regular work attendance, and that he had a only a fair ability to perform many other work-related functions. (Tr. 733-38). Dr. Martin also wrote a letter, received by the Appeals Council, stating that Plaintiff's illness had a significant effect on his ability to function as demonstrated by his inability to sustain employment. (Tr. 29).

There are also opinions from state agency reviewers. Dr. Chapman concluded that from a psychological standpoint, Plaintiff had moderate limitations in his ability to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage himself. This differed from an earlier assessment by Dr. Tzetzo that Plaintiff did not have a severe mental impairment because any limitations in his mental functioning were mild. As to physical restrictions, both Dr. Wang and Dr. Koenig did not find and physical work-related limitations.

### III.  STANDARD OF REVIEW

The Court of Appeals for the Second Circuit has stated that, in reviewing a final decision of the Commissioner of Social Security on a disability issue,

> "[i]t is not our function to determine de novo whether [a plaintiff] is disabled." *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir.1996). Instead, "we conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision and if the correct legal standards have been applied." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir.2009); *see also* 42 U.S.C. § 405(a) (on judicial review, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive.").

Substantial evidence is "more than a mere scintilla." *Moran*, 569 F.3d at 112

    (quotation marks omitted). "It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion." *Id*. (quotation marks omitted
and emphasis added). But it is still a very deferential standard of review—even
more so than the "clearly erroneous" standard. *See Dickinson v. Zurko*, 527 U.S.
150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999). The substantial evidence
standard means once an ALJ finds facts, we can reject those facts "only if a
reasonable factfinder would have to conclude otherwise." *Warren v. Shalala*, 29
F.3d 1287, 1290 (8th Cir.1994) (emphasis added and quotation marks omitted);
*see also Osorio v. INS*, 18 F.3d 1017, 1022 (2d Cir.1994) (using the same
standard in the analogous immigration context).

*Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d 443, 447–48 (2d Cir. 2012).

## IV.  DISCUSSION

### A.  Specific RFC Limitations

    Plaintiff first argues that the ALJ made some very specific findings when determining Plaintiff's residual functional capacity, including the fact that he could frequently use his hands for fine and gross manipulation and could interact occasionally with others in the workplace but not with the public.  He contends that these limitations are inconsistent with the evidence and that the ALJ failed adequately to explain how he made them.  In particular, he notes that no physician expressed an opinion about how frequently Plaintiff could use his hands and that there was no basis in the record for making a distinction about how often Plaintiff could interact with coworkers and supervisors as opposed to the general public.

    The Commissioner responds, first, that the ALJ properly took into account both the findings contained in treatment records and Plaintiff's own testimony in limiting him to low-stress work which necessarily included restrictions on his ability to interact with others and that his decision was also supported by the opinion of Dr. Chapman, the state agency reviewer, who found that Plaintiff had a moderate limitation in the area of social interaction.  The Commissioner contends that it was not error to make this restriction more limiting by precluding interaction with the general public even though Dr. Chapman did not go that far in his opinion.  As to the manipulative limitations, the Commissioner again asserts that these were supported by the totality of the evidence and by the opinion evidence from Drs. Liu, Koenig, and Wang.

    The important portions of the ALJ's decision are as follows.  After summarizing the medical evidence, the ALJ considered the various opinions which addressed Plaintiff's ability to function in the workplace.  He found neither Dr. Ransom's nor Dr. Liu's opinions to be persuasive, noting that although each opinion was supported by the essentially normal examination results, they were not consistent with the treatment records which showed that Plaintiff did have significant physical and mental limitations.  For the same reasons, he largely discounted all of the state agency reviewers' opinions except for Dr. Chapman's.  As noted above, Dr. Chapman believed that Plaintiff had a fair number of moderate mental limitations

relating to his ability to interact with others, to concentrate, persist, or maintain pace, and to adapt or manage himself.  The ALJ therefore limited Plaintiff to low stress jobs with limited interaction with others.  As to his physical abilities, the ALJ said that

> [d]ue to the claimant's CRPS, carpal tunnel syndrome, and sciatica, the claimant is limited to light exertion with only frequent balancing, kneeling, crouching, stooping, and crawling; frequent climbing of ramps and stairs; and no climbing ladders, ropes, or scaffolds. As a precaution due to the claimant's carpal tunnel syndrome and associated intermittent numbness and tingling of the left digits, the undersigned restricted him to frequent handling and fingering.

(Tr. 50).  The question presented is, of course, whether the ALJ's determination as to these restrictions, particularly the ones relating to interacting with others and use of his hands, is supported by substantial evidence.

A part of Plaintiff's argument is that the ALJ had no basis for distinguishing between Plaintiff's ability to interact with others in the workplace, which the ALJ said that Plaintiff could do occasionally, and to interact with the general public.  Plaintiff acknowledges that Dr. Chapman, whose opinion the ALJ found to be persuasive, concluded that Plaintiff had moderate limitations in the area of social interaction, but he argues both that "more severe social restrictions may well be warranted by the application of proper analysis" (Doc. 7-1 at 25) and that this Court has consistently held that a remand is required if the record does not support making a distinction in the way in which a claimant can deal with various categories of other people.

The first portion of this argument clearly lacks merit.  Plaintiff does not point to any evidence that there should have been more restrictions added to the way in which he could interact with others, and, in fact, argues that the more severe restriction in his ability to deal with the general public was not supported by the evidence.  As to this latter contention, Plaintiff relies heavily on this Court's decision in *Valerie R. v. Comm'r of Soc. Sec.*, 2021 WL 671597 (W.D.N.Y. Feb. 22, 2021) for the proposition that the kind of distinction made by the ALJ in this case was reversible error.

In *Valerie R.*, the ALJ had concluded that the claimant could interact occasionally with the general public but had no limitations on her ability to interact with others in the workplace. The evidence cited by the ALJ to support such limitations was a consultative opinion that the claimant had mild limitations in her ability to interact with others in general.  This Court noted that the ALJ had not provided any explanation for how that limitation "translated to only occasional interaction with the public but unlimited interaction with co-workers and supervisors." *Valerie R.*, *supra*,  at *3.  Compounding the error was the fact that all of the other opinions on this subject supported serious limitations in relating to or working in proximity with others.  As a result, and because the ALJ provided no explanation for his thought process, the Court found that his conclusion was not supported by substantial evidence and that a remand was required.  Plaintiff also relies on *Joshua T. v. Comm'r of Soc. Sec.*, 2021 WL 1099614

(W.D.N.Y. Mar. 23, 2021), a case in which the Court concluded that there was no basis for the ALJ's determination that the claimant could relate better to supervisors than others because the evidence showed that he actually had more serious issues with his supervisors.

In both of these cases, there was significant evidence, not addressed by the ALJ, that the claimant was more limited than the ALJ found. Here, by contrast, the ALJ appears to have imposed a limitation on Plaintiff's interaction with the public that is more severe than the evidence suggested. It is ordinarily not reversible error for an ALJ to give a claimant the benefit of the doubt by imposing limitations that are more favorable to the claimant than the medical evidence suggests. *See, e.g., Jessica Lynn J. v. Comm'r of Soc. Sec.*, 645 F.Supp.3d 128 (W.D.N.Y. 2022). As in that case, there was testimony from the Plaintiff that he was only comfortable when being around his family members. Consequently, the Court concludes that this portion of Plaintiff's first claim of error does not provide a basis for remand.

The other part of this first claim relates to the ALJ's finding that Plaintiff could frequently use his hands for gross and fine manipulation. The ALJ, in his summary of the evidence, noted that Plaintiff's first complaint of left wrist pain occurred in September of 2020 and that by October of that year he was complaining of intermittent swelling, numbness, and tingling of the fingers. An examination done at that time did not show any limitation on the range of motion and Plaintiff had normal muscle strength as well. Plaintiff then started occupational therapy and reported an improvement in his symptoms, although when he went to work for UPS he experienced pain in his left wrist when using it repetitively. (Tr. 46-47). That is an accurate summary of what the record showed.

As far as opinion evidence is concerned, the ALJ discounted Dr. Liu's opinion of no physical restrictions because it did not account for the diagnosis of carpal tunnel syndrome (which did not happen until after Dr. Liu saw Plaintiff) and was inconsistent with the later evidence that Plaintiff needed both occupational therapy for his wrist and assistance from his father during employment. (Tr. 47). In reviewing other opinion evidence, the ALJ found the opinion of Dr. Wang, the state agency reviewer, and the confirmation of that opinion in March of 2021 by Dr. Koenig, a second reviewer, not to be persuasive as well. Both of these sources concluded that Plaintiff had no severe physical impairments. The ALJ concluded that both opinions were "supported by explanations premised in the claimant's activities of daily living, mild EMG findings, and relatively mild examination findings" but also stated that "[n]evertheless, the claimant's recurring complaints regarding his wrist ... indicate[s] that [this] impairment causes more than minimal functional limitations," a conclusion supported by the fact that Plaintiff underwent occupational therapy directed to his wrist impairment. (Tr. 48). As a result, as Plaintiff points out, the ALJ did not rely on any particular medical opinion when he determined that Plaintiff could use his hands frequently for gross and fine manipulation, and Plaintiff claims that was error. The Commissioner contends, however, that the ALJ was entitled to, and did, rely on other portions of the record to support that conclusion, including this statement:

> For his physical impairments, the claimant admitted he was noncompliant with

> using his night splints.... His pain was managed with Aleve and he did not receive any injections or surgery.... While the claimant initially testified he could only use his hands about 30 seconds before developing pain and numbness, he later admitted to spending time on his laptop and playing video games for up to 30 minutes at a time.  Moreover, EMG showed only mild left carpal tunnel syndrome and he generally endorsed mild hand and wrist pain.

(Tr. 50).

This Court has addressed the applicable legal principles here on multiple occasions. These precepts are well-stated in *Deanna K. v. Comm'r of Soc. Sec.*, 2023 WL 5443901, at *5 (W.D.N.Y. Aug. 24, 2023), where the Court said:

> The ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Benman v. Comm'r of Soc. Sec.*, 350 F. Supp. 3d 252, 256-57 (W.D.N.Y. 2018) (*quoting Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013)). But an ALJ is "not a medical professional," and "is not qualified to assess a claimant's RFC on the basis of bare medical findings." *Id*. at 257 (*quoting Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018)). An ALJ may not, therefore, substitute his own judgment for competent medical opinion, *see Quinto v. Berryhill*, No. 17-CV-24, 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017), and an ALJ's RFC determination "without a medical advisor's assessment is not supported by substantial evidence," *Dennis v. Colvin*, 195 F. Supp.3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted). However, "[a]n ALJ's conclusion need not perfectly correspond with any of the opinions of medical sources cited in his decision." *Benman*, 350 F. Supp. 3d at 257 (*quoting Matta*, 508 F. App'x at 56) (internal quotation marks omitted). Moreover, "remand is generally not warranted where the ALJ's RFC finding is more restrictive than the limitations set forth in the medical opinions of record, inasmuch as any alleged error in this regard inures to the claimant's benefit." *Baker v. Berryhill*, No. 15-CV-943, 2018 WL 1173782, at *4 (W.D.N.Y. March 6, 2018).

An issue similar to this one was addressed by this Court in *Wayne C. v. Comm'r of Soc. Sec.*, 2025 WL 755429 (Mar. 10, 2025).  There, the ALJ considered opinion evidence that limited the claimant to the occasional use of his hands due to carpal tunnel syndrome.  She rejected that evidence, concluding, instead, that the claimant could use his hands frequently - a conclusion that did not mirror any of the medical opinions in the record.  Plaintiff argued, based on *Matta* and similar cases, that this represented an improper substitution of the ALJ's lay opinion based on an interpretation of raw medical data.  In rejecting that contention, this Court noted that the ALJ had relied on, among other items of evidence, "Plaintiff's normal abilities with respect to fine motor activities in his hands, [and] his daily and work activities" and that the ALJ had used the opinions which she found to be too restrictive as "data points" in reaching his conclusion. *Wayne C.*, at *3.  The Court found that this method of analysis did not make it "a

case where the ALJ failed to consider any expert guidance whatsoever" and therefor held that "remand is not warranted on the theory that the ALJ relied solely on her 'lay opinion' to construct the RFC." *Id*.

Here, too, although the ALJ did not find Drs. Wang's and Koenig's opinions to be persuasive, he used them as a starting point for his analysis. He then cited to similar items of evidence, such as Plaintiff's ability to use his hands performing everyday activities and the relatively mild findings on examination, to conclude that a greater degree of restriction was warranted. This was not error and does not warrant a remand on this second issue.

### B. Opinion Evidence

Secondly, Plaintiff asserts that the ALJ did not properly assess the opinion evidence. In support of this contention, Plaintiff argues that the ALJ did not cite to proper reasons for discounting Dr. Martin's opinion of disabling symptoms, failed to contact Dr. Martin for a further explanation of his findings, and improperly filled the gap in the record (after disregarding Dr. Martin's conclusions) with his own lay interpretation of the raw medical data. According to the Commissioner, however, the ALJ properly applied the factors of consistency and supportability to Dr. Martin's opinion and appropriately discounted it because neither his own findings nor the remainder of the evidence supported such extreme limitations and were inconsistent with the conclusion that Plaintiff was limited to that extent in his work-related functioning.

The ALJ provided this explanation for discounting Dr. Martin's opinion. After acknowledging that Dr. Martin was a treating source, the ALJ determined that his opinion was "not entirely supported by Dr. Martin's records or consistent with other evidence of record." (Tr. 49). As examples, the ALJ noted that Dr. Martin had indicated that Plaintiff's ability to understand and remember detailed instructions was actually superior to his ability to understand and remember simple instructions. The ALJ also viewed Dr. Martin's finding that Plaintiff had only moderate restrictions in managing and handling himself to be inconsistent with the conclusion that he would be excessively absent from work. Additionally, the ALJ cited to Plaintiff's "good activities of daily living" and the fact that he had been stabilized with conservative treatment and medication management as evidence that he was not as limited as Dr. Martin believed him to be. *Id*. Earlier in his decision, the ALJ made clear that he was accepting Dr. Chapman's opinion that Plaintiff had moderate limitations in three areas of mental functioning as persuasive because that opinion was consistent with Plaintiff's course of treatment and activities of daily living. (Tr. 48).

Plaintiff argues that this analysis does not comport with the current regulatory scheme for evaluating medical opinions. As this Court has said,

> [s]upportability and consistency are the most important of the five regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Accordingly, the ALJ "will explain how [he] considered the supportability and consistency factors for a

medical source's medical opinions or prior administrative medical findings." *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2) (emphasis added). The ALJ may, but is not required to, explain how he considered the remaining three factors. Id. An ALJ's failure to explain the supportability and consistency of the medical opinions or prior administrative medical findings in the record is procedural error. *Loucks v. Kijakazi,* No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022) (summary order). However, if a searching review of the record assures the court that "the substance of the regulation was not traversed," a court may affirm the Commissioner's decision despite the error. *Id*. (*quoting Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019)) (alterations omitted).

*Brianne S. v. Comm'r of Soc. Sec*., 2023 WL 6225249, at *4 (W.D.N.Y. Sept. 26, 2023).

The ALJ clearly applied the correct standard here, evaluating Dr. Martin's opinion for both supportability and consistency with Dr. Martin's own findings and with other portions of the record, including Plaintiff's activities of daily living and the opinions of other sources such as Dr. Chapman. Plaintiff contends that the reasons given for finding Dr. Martin's opinion not to be persuasive are not valid. However, those reasons accurately reflect the state of the record, and they bear a logical relationship to the persuasiveness of Dr. Martin's conclusions. Both the nature of a claimant's treatment and his activities of daily living are relevant to the issue of the severity of his mental limitations and restrictions. And, as the Commissioner notes, the fact that the record also contains support for Dr. Martin's opinions is not a basis for remand. As the Court of Appeals has said, "[e]ven where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings must be given conclusive effect so long as they are supported by substantial evidence." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (per curiam). The Court therefore finds no error in the ALJ's analysis of Dr. Martin's opinion.

## V.  CONCLUSION AND ORDER

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Doc. 7), **GRANTS** the Commissioner's motion (Doc. 8), and **DIRECTS** the Clerk to enter judgment in favor of the Defendant Commissioner of Social Security Commissioner.

                                      **/s/ Terence P. Kemp**
                                      **United States Magistrate Judge**